UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
SEP 30 1998
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
OCT 1 1998

**EZELL PARKER,**   ]
              ]
   Plaintiff, ]
              ]
   vs.        ]   CV 98-N-1381-E
              ]
**LARRY AMERSON, et al.,** ]
              ]
   Defendants. ]

### Memorandum of Opinion

In this action, the plaintiff, Ezell Parker, seeks redress pursuant to 42 U.S.C. § 1983 for violation of his rights under the United States Constitution. Specifically, Parker claims that he was denied rights guaranteed by the Fourteenth Amendment, and other amendments to the U.S. Constitution, when he was allegedly beaten by a group of other inmates while detained at Calhoun County Jail in Calhoun County, Alabama. The defendants in this case are Larry Amerson, the Sheriff of Calhoun County, and Bruce Barclift, the Warden of the Calhoun County Jail. Both defendants are sued in both their individual and official capacities.[1]

The matter is presently before the court on a motion to dismiss filed by the defendants on July 8, 1998. The motion has been fully briefed and was submitted at the court's regularly scheduled motion docket on Wednesday, September 30, 1998.

---

[1] An "official capacity" claim against an individual is actually a claim against the governmental entity for which that individual acts. *Monell v. City of New York*, 98 S. Ct. 2018, 2035, n.5 (1978). Therefore, the official capacity claims against Amerson and Barclift are actually claims against the State of Alabama.

A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the claimant can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957); *Draughton v. City of Oldsmar*, 767 F. Supp. 1144, 1145 (11th Cir. 1991). The court, when ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, is required to view the complaint in a light most favorable to the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

In his first amended complaint,[2] the factual circumstances alleged by Parker are as follows: Parker was arrested by the Anniston, Alabama police on a charge of burglary on or about January 23, 1998. *First Amended Complaint* at ¶ 7. He was transferred to the Calhoun County Jail as a pretrial detainee the next day. *Id.* at ¶ 8. The cell doors at Calhoun County Jail are secured by electronic locks, in addition to being padlocked at approximately 10:00 P.M. each night. *Id.* at ¶¶ 9, 11. The jail utilized the padlocks as an additional precaution because the electronic locks "constantly malfunctioned." *Id.* at ¶¶ 10-11. On January 24, 1998, at a time when the cell doors would typically be padlocked, several inmates gained entry to Parker's cell,[3] beat him, and threw him from the second tier of the balcony to the first floor below. *Id.* at ¶¶ 12-13. Plaintiff suffered numerous injuries. *Id.* at ¶ 14. According to Parker, the defendants were aware that the electronic locks were

---

[2] The plaintiff filed his original complaint on May 29, 1998. Pursuant to this court's order to replead, entered on June 15, 1998, Parker filed his first amended complaint on June 30, 1998. The amended complaint superseded Parker's initial filing.

[3] Parker does not state in his amended complaint how the inmates who allegedly assaulted him gained entry to his cell notwithstanding the padlock. In his initial complaint, in contrast, Parker claimed that the inmates "obtained possession of the key to [his] cell." *Initial Complaint* at ¶ 12.

2

unreliable and that prisoners could break the electronic locks even while they were functional. *Id.* at ¶ 10. Plaintiff also alleges that the defendants were "aware of the substantial risk of suffering serious harm as a result of an attack from other inmates that could arise from the malfunction and unreliability of the electronic locks at the Calhoun County Jail." *Id.* at ¶¶ 19, 26.

As an initial matter, the court must determine whether Parker has stated a valid claim—that is, whether he has alleged on the face of his complaint that the defendants deprived him of a right guaranteed by the Constitution or federal law. In essence, Parker claims that "[a]s a direct and proximate result of the callous and deliberate indifference of [Amerson and Barclift] in providing plaintiff with adequate protection, plaintiff was caused to suffer severe physical and mental injuries, and thus was deprived of his rights guaranteed by the Fourteenth Amendment to the United States Constitution." *Id.* at ¶¶ 21, 29. In *Farmer v. Brennan,* 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994), the Supreme Court reaffirmed its holding that the "deliberate indifference" of prison officials to a substantial risk of serious harm to an inmate may violate the Eighth Amendment to the U.S. Constitution.[4] Although prison officials have a duty to protect prisoners from violence at the hands of other prisoners, "deliberate indifference" on the part of prison officials requires more than ordinary lack of due care for a prisoner's interests or safety. *Farmer,* 511 U.S. at 833, 835-36. The *Farmer* court concluded that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement

---

[4] Although the protections of the Eighth Amendment extend only to convicted prisoners, claims made by pretrial detainees under the Due Process Clause of the Fourteenth Amendment are subject to the same analysis. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996).

3

unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the present case, Parker simply fails to allege that the defendants disregarded an "excessive risk to inmate health and safety" by not preventing the failure of the electronic locks on the day he was assaulted. While defendants may have realized that repeated failure of the cell door locking system was less than ideal from the standpoint of prison stability, plaintiff has not alleged any facts that would indicate that Amerson and Barclift knew of any prior occurrences of inmate violence during times when the electronic locks were inoperative. This case is therefore unlike *Hale v. Tallapoosa County,* in which the Eleventh Circuit found probative the fact that violence had occurred regularly under the conditions at issue and that the sheriff knew of the regular inmate-on-inmate violence. 50 F.3d 1579, 1583 (11th Cir. 1995). Parker's allegations amount to an argument that the defendants should have guessed that eventually someone might be injured due to the failure of the electronic locks, and therefore had a duty to protect him. That being the case, the court cannot conclude that the defendants acted with "deliberate indifference" to a substantial risk of harm to the plaintiff.

The defendant's claim that they are entitled to immunity from suit. As noted earlier, claims against Amerson and Barclift in their official capacity are actually claims against the governmental entity for which they act—in this case, the State of Alabama. *See Monell v. City of New York*, 98 S. Ct. 2018, 2035, n.5 (1978). As a general matter, states are entitled to sovereign immunity from suit pursuant to the Eleventh Amendment to the United States

4

Constitution. Since the State of Alabama has not waived its Eleventh Amendment immunity and Congress has in no way abrogated immunity as to suits such as the one currently before the court, see *Seminole Tribe v. Florida*, 517 U.S. 44, 54-55, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996), the State of Alabama is entitled to Eleventh Amendment sovereign immunity in this case.

The defendants also claim that they are entitled to qualified immunity from personal liability. The doctrine of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The doctrine embodies an "objective reasonableness" standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them. *Id.* Qualified immunity thus represents the rule, rather than the exception. *Id.* "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).

With respect to § 1983 claims for U.S. constitutional violations, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S.

5

at 818. For a right to be "clearly established," previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As noted earlier, the defendants did not infringe upon the plaintiff's constitutional rights under the Due Process Clause of the Fourteenth Amendment. Assuming that they had, however, the defendants would still be entitled to qualified immunity from personal liability because the defendants' conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Contrary to plaintiff's suggestion, *Farmer v. Brennan* does not provide the clear, unambiguous direction with regard to the defendants' actions necessary to hold them personally liable. General rules and abstract rights, which is the most that *Farmer* can be said to have offered in the context of the present case, are insufficient to provide the type of notice required to defeat a claim of qualified immunity. *Lassiter,* 28 F.3d at 1150. Therefore, defendants' are entitled to qualified immunity from personal liability.

For the foregoing reasons, defendant's motion to dismiss, filed July 8, 1998, will be granted and this case will be dismissed with prejudice as to all federal claims arising out of the alleged January 24, 1998, incident. A separate order consistent with this opinion will be entered.

Done, this 30th of September, 1998.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE